# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 20-388


ROBERT LAPOINT

VERSUS

COMMERCE & INDUSTRY INSURANCE
COMPANY AND STEPHENS TPS, INC.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 03
PARISH OF CALCASIEU, NOS. 13-6349, 15-2726, 17-1901
DIANNE MARIE MAYO, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Shannon J. Gremillion, John E. Conery, Candyce G. Perret, and Sharon Darville Wilson, Judges.


Gremillion, J., dissents in part and assigns reasons.


**EXCEPTION OF RES JUDICATA SUSTAINED.**
**JUDGMENT REVERSED AND VACATED.**

**Aaron Broussard**
**Broussard & Williamson**
**1301 Common Street**
**Lake Charles, LA 70601**
**(337) 439-2450**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
  **Robert LaPoint**

**Robert A. Dunkelman**
**Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, L.L.P.**
**400 Texas Street, Suite 400**
**Shreveport, LA 71166-1786**
**(318) 221-1800**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
  **Stephens TPS, Inc.**
  **Commerce and Industry Insurance Company**

**CONERY, Judge.**

Robert LaPoint sustained serious injuries while on a work assignment in Georgia. Mr. LaPoint's employer, Stephens TPS, Inc. (Stephens), and its insurer, Commerce and Industry Insurance Company (C&I), provided initial workers' compensation benefits in Georgia and thereafter under Louisiana law. Stephens and C&I intervened for workers' compensation benefits paid to Mr. LaPoint in a suit that Mr. LaPoint filed in Georgia against alleged third-party tortfeasors, a principal contractor and its employee. Although Mr. LaPoint reached a mediated settlement with the tortfeasor defendants in the Georgia tort suit, the amount due Stephens and C&I as workers' compensation intervenors remained unresolved. A workers' compensation claim was thereafter filed in Louisiana, with the workers' compensation judge eventually ordering reimbursement to Stephens and C&I out of Mr. LaPoint's third-party tort settlement for past workers' compensation benefits paid to Mr. LaPoint, as well as a credit for any future workers' compensation obligations under Louisiana law. Mr. LaPoint appeals and, for the first time in this court, files an exception of res judicata. For the following reasons, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

As indicated by the parties' stipulations presented to the Louisiana workers' compensation judge, Stephens hired Mr. LaPoint to perform sandblasting and painting work. Although Mr. LaPoint initially worked for Stephens in Louisiana, he was working in Atlanta, Georgia at the time of his underlying March 8, 2012 work-related accident. The record indicates that the accident occurred when Mr. LaPoint's lower body was crushed by a semi-truck owned by a third-party tortfeasor, Utility Services Company (USCI), and operated on that day by USCI employee, David

Michael Jackson. Stephens' operations on the Georgia project were performed under contract with USCI, a company providing water storage tank maintenance services.

At the time of the stipulations, Mr. LaPoint had received medical treatments totaling $938,518.48 and weekly indemnity benefits totaling $135,892.12. Of those sums, $7,283.03 was paid pursuant to Georgia Workers' Compensation Statutes with the remainder paid pursuant to Louisiana Workers' Compensation Statutes.

The parties also provided the WCJ with the procedural history of the two-jurisdiction matter, explaining that, after the March 2012 accident, Mr. LaPoint filed separate claims against the purported third-party tortfeasors, USCI and Mr. Jackson, in Fulton County Superior Court in Georgia.[1] Stephens and C&I intervened in both matters, seeking recovery of all medical and workers' compensation benefits paid.

Mr. LaPoint also filed an initial workers' compensation matter in Louisiana in July 2013, under docket number 13-6349, which he amended on several occasions, alleging miscalculation of his workers' compensation benefit, and failure to provide medical treatment.

With workers' compensation matters proceeding in Louisiana, Mr. LaPoint, Stephens, and C&I entered private mediation with the third-party tortfeasors in Georgia and entered into a written settlement agreement in August 2015. According to the pre-hearing stipulations, however, Mr. LaPoint, Stephens, and C&I "could not agree whether any recovery or credit is due Stephens [] and [C&I] arising out of the workers' compensation payments made." With the parties acknowledging the

---

[1] Mr. LaPoint filed suit against USCI, bearing docket number 2013 CV 23:9667, in November 2013 and against David Michael Jackson, bearing docket number 14EV00514, in March 2014.

dispute and signaling an intent to pursue judicial determination of sums due, the disputed funds were held in the trust account of Mr. LaPoint's counsel.[2]

Stephens and C&I filed their own claim in the Louisiana OWC, a case assigned docket number 15-2726, seeking a judicial determination of their "credit and reimbursement rights for the monies paid under the Louisiana Workers' Compensation Act and subsequently filed a disputed claim on March 29, 2017 seeking an order of forfeiture of benefits as Robert LaPoint has not reimbursed Stephens [] and [C&I] the monies being held in the attorney's trust account."

The parties stipulated with regard to the funds that:

> There is presently held in plaintiff's counsel's trust account the sum of $863,695.00 which sum represents payments made by Stephens

---

[2] In pertinent part, the "General Release and Settlement Agreement" provided:

> RELEASOR, agrees and avers, as a condition precedent to the settlement of this matter, to be responsible for satisfying, adjudicating, or compromising all legally enforceable liens, subrogation claims and claims for reimbursement including but not limited to Worker's Compensation, Medicare, Medicaid, CHAMPUS, ERISA, hospital health and any other legally enforceable liens of any kind. The undersigned further states that pursuant to O.C.G.A. § 44-14-473, all hospital, medical, and physician bills incurred for treatment rendered to RELEASOR have been fully paid or will be paid by RELEASOR from the Settlement Funds (See Plaintiff's O.C.G.A. § 44-14-473 Lien Affidavit attached hereto as Exhibit "A").

> Commerce and Industry Insurance Company, RELEASOR'S workers' compensation carrier, agrees and avers to provide lien waivers to RELEASEES.

> Commerce and Industry Insurance Company and Stephens TPS, Inc. (hereinafter, "Intervening Plaintiff") consent to this Settlement and Release Agreement on the condition that RELEASOR is to escrow in RELEASOR'S counsel's trust account the sum of $863,695.00. Said funds are to remain held in the trust account until such time as a judicial adjudication has been made as to the Intervening Plaintiffs' reimbursement rights, lien amount, future credit, Plaintiff's attorneys' fees, Plaintiff's right to future compensation including medical expenses and any other workers' compensation obligation which may be due. RELEASOR and Intervening Plaintiffs agree that sums held in escrow do not represent the total sums in dispute as continuing benefits may be due. All such future payments are included in the determination to be made by the courts.

> The parties acknowledge that RELEASOR intends to pursue the judicial adjudication in Georgia and Intervening Plaintiffs intend to pursue the judicial adjudication in Louisiana. RELEASOR does not consent to the adjudication in Louisiana. Intervening Plaintiffs do not consent to the adjudication in Georgia.

TPS, Inc. and Commerce and Industry Insurance Company to or on behalf of Robert Lapoint pursuant to the provisions of the Louisiana Workers' Compensation Act prior to the date of the settlement of the Georgia third party claims.

A subsequently executed "Settlement Agreement and Release" entered into between

Mr. LaPoint and Stephens and C&I, provides in pertinent part:

> [T]he undersigned, Stephens TPS, Inc. and Commerce and Industry Insurance Company ("Releasors") for the sole consideration of ONE THOUSAND FIVE HUNDRED and NO/100 dollars ($1,500.00) the receipt of which is hereby acknowledged, does hereby release, acquit and discharge Robert LaPoint ("Releasee") and his agents, servants, successors, heirs, executors, and administrators from ONLY the claim(s) arising from benefits allegedly paid pursuant to Georgia workers' compensation statutes that total approximately $7,282.03, as a result of the event which occurred on or about March 8, 2012 involving Robert LaPoint.

> This Settlement Agreement and Release ("Release") does NOT address, affect, release, or discharge the claim(s) arising from benefits paid pursuant to Louisiana workers' compensation law that approximately total over $856,413.96., as a result of the event which occurred on or about March 8, 2012 involving Robert LaPoint. LaPoint specifically reserves the right to dispute any and all other alleged lien rights or legal rights asserted by Releasors, including but not limited to, choice of law and jurisdictional issues. Likewise, Releasors reserve any and all rights to pursue any and all other alleged lien rights or legal rights in any and all courts in accordance with the law. This release does not have any affect beyond a compromise of the $7,282.03 paid by Releasors allegedly pursuant to Georgia workers' compensation statutes.

> It is understood and agreed that this settlement is the compromise of a thoughtful and disputed claim and that the payment made is not to be construed as an admission of liability on the part of the Releasors.

> It is expressly understood this Release does not affect any other rights, causes of action or demands that are not addressed specifically in this Release that the Releasors and the Releasee may have for other events or contracts.

> The undersigned, Releasee hereby declares and represents that no promise, inducement or agreement not herein expressed has been made, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital.

4

Mr. LaPoint, in turn, filed a motion for summary judgment in the Georgia litigation seeking a determination that Stephens and C&I were not entitled to recover any of the workers' compensation benefits they had paid. The Georgia court ruled in favor of Mr. LaPoint, explaining:

> Plaintiff is a Louisiana resident who was injured in the course of his employment in Georgia. [Stephens and C&I] paid workers['] compensation benefits to Plaintiff initially under Georgia's workers' compensation statutes and shortly thereafter, under Louisiana's workers' compensation statutes. [Stephens and C&I] intervened in the instant action to enforce their subrogation lien for workers['] compensation benefits paid to the Plaintiff. In this Motion, Plaintiff seeks a determination that [Stephens and C&I] are not entitled to recover their subrogation lien as to workers['] compensation benefits paid to Plaintiff under both Georgia and Louisiana's workers['] compensation statutes. Plaintiff argues that their Motion to Intervene was not limited to benefits paid under Georgia law and instead, [Stephens and C&I] asserted in the instant action a lien for the entire amount of benefits paid to Plaintiff.

> Upon review of the record, the Court agrees that [Stephens and C&I's] Motion to Intervene was not limited as to benefits paid under Georgia workers['] compensation law, but also included benefits paid under Louisiana workers['] compensation statutes. In their supporting brief, [Stephens and C&I] sought to intervene as to the total amount then paid to Plaintiff, a vast majority of which was paid under Louisiana statutes. **Under the rule of lex loci delicto, this Court must apply Georgia substantive law irrespective of whether the Georgia workers' compensation law was invoked to pay the benefits.** <u>Performance Food Grp., Inc. v. Williams</u>, 300 Ga. App. 831, 686 S.E.2d 437 (2009). **Therefore, [Stephens and C&I's] subrogation claim is governed by Georgia law. Under Georgia's workers' compensation statutory scheme, an employer or insurer's subrogation right is limited to benefits paid under Georgia's Workers' Compensation Act.** <u>Id.</u> **Therefore, this Court finds that [Stephens and C&I] are "precluded from asserting what might be a valid subrogation under [Louisiana] law["],** <u>Id.</u> **at 833, and, therefore, cannot pursue in Georgia a subrogation claim for the benefits they paid under [] Louisiana law.**

(Emphasis added.)

Mr. LaPoint thereafter sought to enforce the Georgia order by an action in the Fourteenth Judicial District Court of Louisiana, docket number 2016-2947. The trial

5

court did so, ordering that the Georgia order was entitled to full faith and credit. No appeal was taken from that Order.

Stephens and C&I then filed a further claim with the OWC, proceeding under docket number 17-1901, seeking forfeiture of Mr. LaPoint's benefits due to a purported failure to reimburse them from the Georgia settlement proceeds. The WCJ consolidated this latter proceeding with Mr. LaPoint's claim in 13-6349 and with Stephens and C&I's earlier filed claims in 15-2726.

Mr. LaPoint thereafter filed exceptions of lack of subject matter jurisdiction and no cause of action. After the WCJ denied both exceptions, Mr. LaPoint filed an application for writ of supervisory review. A panel of this court denied the application. *See LaPoint v. Stephens TPS, Inc.*, 18-471 (La.App. 3 Cir. 7/20/18)(an unpublished writ ruling). The supreme court thereafter denied Mr. LaPoint's writ application before that court. *Stephens TPS v. LaPoint*, 18-1394 (La. 10/8/18), 253 So.3d 799.

The Louisiana WCJ heard the consolidated matters in March 2019. In addition to the stipulated facts, the WCJ considered the parties' submissions, which included medical records, the records of underlying Louisiana proceedings, and excepts from the Georgia proceedings, including the settlement agreement reached in the Georgia litigation. Mr. LaPoint also testified at the hearing, describing the accident along with his medical treatment and his return to Louisiana. Much of that testimony pertained to the issue of whether he was in a condition to make a knowing selection of Louisiana compensation benefits over those of Georgia.

After taking the matter under advisement, the WCJ rendered reasons for judgment, which were transcribed for the record on March 21, 2019, and in which the WCJ determined that Mr. LaPoint had capacity to request that his workers'

6

compensation benefits be continued under the Louisiana workers' compensation statutes rather than in Georgia.[3] The WCJ turned to Stephens and C&I's claim for reimbursement from the sum held in Mr. LaPoint's counsel's escrow fund ($856,411.97) and assessed the net reimbursement to be $570,941.32.[4]

A final judgment was delayed, with the WCJ ultimately including an order approving Stephens and C&I's claim for a credit toward their future workers' compensation obligation, a sum not included in the attorney's escrow account.[5] In

---

[3] Finding Mr. LaPoint to be of "sound mind when he elected to change his receipt of Georgia workers' compensation benefits to Louisiana workers' compensation benefits," the WCJ explained that:

> The claimant, Robert LaPoint, argues that the claimant was not competent to change from receiving Georgia workers' compensation benefits to Louisiana compensation benefits on or about August 30, 2012. After careful review of the Grady Memorial records around that time, the claimant was alert, was able to communicate with the staff that he did not want the nicotine patch to cease smoking. In fact, he continued to smoke even though he knew that it would affect his healing process. He was on pain medication and other medication that made him sleepy, but there's nothing in the records that show it hindered his thought processes. Moreover, the issues of where the benefits were paid from did not become an issue until counsel was retained and sent a letter in January 2016 requesting that benefits be changed to Georgia [sic] benefits. The Court finds that the claimant was competent to make the change from Georgia to Louisiana benefits to receive workers' compensation benefits.

[4] The figure includes a deduction for costs of recovery and attorney fees pursuant to *Moody v. Arabie*, 498 So.2d 1081 (La.1986).

[5] The record includes April 1, 2019 correspondence from Dennis R. Stevens, counsel for Stephens and C&I, that followed the March 21, 2019 reasons for ruling and explained that:

> We are in receipt of and thank you for the reasons for judgment in the captioned matter. I note that the court intended to award both credit and reimbursement to defendants. The parties must not have clarified that the amount being held in the plaintiff's attorney's escrow account was for only past indemnity and medical expenses paid prior to the date of settlement of the Georgia third-party claim …. The amount of the credit would be separate and independent from the amount of reimbursement and would apply to those sums received in the third-party claim, less the amount being held in the attorney's escrow account and less the Moody fee.

> The calculation of the credit, which is separate and independent form the calculation of the reimbursement, would be as follows: $4,000,000.00 – 863,695.00 - $3,136,305.00. $3,136,305.00 minus 1/3 ($1,045,435.00) equals $2,090,870.00. The amount of the credit applied to future workers' compensation benefits is in the amount of $2,090,870.00.

7

addition to the order of reimbursement in the amount of $570,941.00, the November 26, 2019 judgment provided that Stephens and C&I "are entitled to a credit toward their future workers' compensation obligation under Louisiana law and, considering the agreement of the parties as to the amount thereof, the future credit is hereby set at $2,095,735.36."

Mr. LaPoint appeals, questioning whether the OWC had subject matter jurisdiction to determine issues of reimbursement or credit. He also files an exception of res judicata for the first time on appeal.

## LAW AND DISCUSSION

*Exception of Res Judicata*

In his brief filed in support of his exception of res judicata, Mr. LaPoint maintains that the WCJ was barred from permitting what constituted re-litigation of the previously adjudicated final judgment in Georgia. Mr. LaPoint specifically points to the Georgia district court's October 20, 2015 ruling, set forth in full above, and argues that the Georgia court determined that Georgia law governed the entire subrogation claim asserted by Stephens and C&I in those proceedings against the third-party tortfeasors. He notes that Stephens and C&I did not appeal the Georgia ruling. Given the finality of the Georgia judgment, Mr. LaPoint continues in arguing that Stephens and C&I are barred from further litigating that they have a right of subrogation against LaPoint's Georgia tort recovery for benefits paid to him under the Louisiana compensation statutes and/or for a credit for future benefits.

In opposition, Stephens and C&I assert that the use of the exception of res judicata is merely a re-characterization of Mr. LaPoint's challenge to the OWC's subject matter jurisdiction to consider the claim for credits for future benefits to be paid under Louisiana compensation law. Relying on this nexus with the underlying

8

subject matter jurisdiction claim, Stephens and C&I contend that this court should readily overrule the exception of res judicata as the OWC's ruling on the subject matter jurisdiction issue was rejected by this court on writ review and subsequent review denied by the supreme court, as explained above. *See Stephens*, 18-471.

This latter claim in opposition, which invokes the law of the case doctrine, lacks merit. The law of the case doctrine provides merely that "an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal of the same case." *Hernandez v. La. Workers' Comp. Corp.*, 15-118, p. 5 (La.App. 3 Cir. 6/3/15), 166 So.3d 456, 459. Notably, however, in this case the exception of res judicata has been lodged *for the first time* on appeal. The record contains no exception of res judicata filed below and, accordingly, no corresponding ruling from the OWC or this court. Further, application of the law of the case doctrine is discretionary. *Id.* Even "[a] prior denial of supervisory writs does not preclude reconsideration of an issue on appeal, nor does it prevent the appellate court from reaching a different conclusion." *Id.* at 458 (citing *State v. Castleberry*, 98-1388 (La. 4/13/99), 758 So.2d 749, *cert. denied*, 528 U.S. 893, 120 S.Ct. 220 (1999)). We accordingly reject Stephens' and C&I's claim that the exception of res judicata should be summarily denied and instead turn to consideration of the merits of the peremptory exception.

Exceptions of res judicata are governed by La.R.S. 13:4231, which reads:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The supreme court has thus explained that, under La.R.S. 13:4231,

a second action is precluded when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Chauvin v. Exxon Mobil Corp.*, 14-0808, pp. 5-6 (La. 12/9/14), 158 So.3d 761, 765 (citing *Chevron U.S.A., Inc. v. State*, 07-2469 (La. 9/8/08), 993 So.2d 187; *Burguieres v. Pollingue*, 02-1385 (La. 2/25/03), 843 So.2d 1049).

Although all of the identified elements are required, the supreme court has identified the "chief inquiry" under La.R.S. 13:4231 as "'whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action.'" *Chevron*, 993 So.2d at 194 (quoting *Burguieres*, 843 So.2d at 1053). This inquiry "'serves the purpose of judicial economy and fairness by requiring the plaintiff to seek all relief and to assert all rights which arise out of the same transaction or occurrence.'" *Oliver v. Orleans Par. Sch. Bd.*, 14-329, pp. 20-21 (La. 10/31/14), 156 So.3d 596, 612 (quoting La.R.S. 14:4231, cmt. (a)), *cert. denied*, 575 U.S. 1009, 135 S.Ct. 2315 (2015).

As a peremptory exception under La.Code Civ.P. art. 927, the exception of res judicata may be considered for the first time on appeal "if pleaded prior to a

10

submission of the case for a decision, and if proof of the ground of the exception appears of record." *See* La.Code Civ.P. art. 2163. *See also Smith v. State, Dep't of Transp. & Dev.*, 04-1317 (La. 3/11/05), 899 So.2d 516. Both qualifiers are present in this case. Finding proof of the exception in the record, we sustain the exception for the reasons below.

Validity of Judgment

This first requirement for the application of res judicata, the validity of the judgment, is demonstrated by the procedural background as reflected in the record. Louisiana Revised Statutes 13:4231, cmt. (d) provides that, "[t]o have any preclusive effect a judgment must be valid, that is, it must have been rendered by a court with jurisdiction over subject matter and over parties, and proper notice must have been given." *See also Burguieres*, 843 So.2d 1049.

The Georgia court determined that it had personal and subject matter jurisdiction over the claim, finding Georgia law applicable given the situs of the accident in that state, and determined that an employer's right of subrogation in Georgia was limited to benefits paid under the Georgia workers' compensation act. *See* Ga.Code Ann., § 34-9-11.1.[6]

---

[6] Titled "Rights of employee or employer or its insurer to proceed against persons other than employer who are liable for employee's injury or death[,]" Ga.Code Ann., § 34-9-11.1 provides, in pertinent part:

> (a) When the injury or death for which compensation is payable under this chapter is caused under circumstances creating a legal liability against some person other than the employer, the injured employee or those to whom such employee's right of action survives at law may pursue the remedy by proper action in a court of competent jurisdiction against such other persons, except as precluded by Code Section 34-9-11 or otherwise.

> (b) In the event an employee has a right of action against such other person as contemplated in subsection (a) of this Code section and *the employer's liability under this chapter has been fully or partially paid, then the employer or such employer's insurer shall have a subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery.* The

11

In determining the limits of its own jurisdiction, the Georgia court relied on

*Performance Food Grp., Inc. v. Williams*, 300 Ga.App. 831, 686 S.E.2d 437 (2009),

a case in which a plaintiff truck driver was injured in a work-related accident while

in Georgia. The employer provided the plaintiff with workers' compensation

benefits under the law of his home state, Tennessee. The employer, in turn, filed a

Georgia suit against the Georgia tortfeasors and intervened in the employee's

corresponding tort suit as well. The employer sought to recover benefits it provided

under the Tennessee compensation law. The Georgia district court, however, denied

the Tennessee workers' compensation intervention and entered summary judgment

in favor of the third-party tortfeasors. The court of appeals affirmed that judgment,

citing its own jurisprudence in explaining:

> "[I]f the plaintiff is eligible for workers' compensation under the law of the state where the tort was committed, the law of that state is applicable even though the plaintiff may have received and accepted workers' compensation in another state." For this purpose, subrogation rights arising from the payment of workers' compensation benefits is a substantive law issue. Because Gunn was injured in Georgia and was eligible to receive workers' compensation benefits in Georgia, Georgia law governs Performance Food's subrogation claim.
>
> Since Georgia law applies, the subrogation rights of employers and insurers on account of their payment of workers' compensation benefits derives from OCGA § 34-9-11.1. "[A]ny subrogation claim which an insurer under the Georgia Workers' Compensation Act may have against a third-party tortfeasor who has caused the death or disability of an employee arises solely by operation of statute." However, "OCGA § 34-9-11.1(b) plainly provides the employer or

---

employer or insurer may intervene in any action to protect and enforce such lien. However, the employer's or insurer's recovery under this Code section shall be *limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter* and shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.

(Emphasis added.)

insurer a right of subrogation limited to benefits paid under the Georgia Workers' Compensation Act," and as a consequence Performance Food cannot pursue a subrogation claim for benefits paid under foreign law.

Performance Food argues that this result is unfair, contending that it had been required to pay benefits under Tennessee law and had no opportunity to contradict its employee's election and pay Gunn benefits in Georgia. As a result, Performance Food argues, "the Georgia courts should not effectively overrule the laws of the State of Tennessee and deny [Performance Food] its right of subrogation provided by Tennessee law." While the trial court's decision precludes Performance Food from asserting what might be a valid subrogation claim under Tennessee law, the trial court acted consistently with binding precedent. That the worker injured in Georgia sought and received benefits in Illinois rather than Georgia made no difference in the application of Georgia law, in light of the rule of lex loci delicti, in *Sargent Indus.*[*, Inc. v. Delta Air Lines, Inc.*, 251 Ga. 91, 303 S.E.2d 108 (1983)]. Our Supreme Court has recently affirmed that the "application of lex loci delicti, even though sometimes leading to results which may appear harsh" remains the law in Georgia. Further, there is no inherent right to subrogation in Georgia, and the legislature's failure to provide for subrogation does not deprive the employer or insurer of due process. "[T]he employer has no constitutionally protected interest in any sums the employee receives from the third-party tortfeasor."

*Id.* at 832-34 (footnote omitted) (citations omitted). *See also Liberty Mut. Ins. Co. v. Roark*, 297 Ga.App. 612, 677 S.E.2d 786 (2009).

Georgia law accordingly provided no subrogation right to Stephens and C&I for benefits paid under the Louisiana's Workers' Compensation Act. The final judgment of the Georgia court has been found to be entitled to full faith and credit in a final judgment of the Fourteenth Judicial District Court. *See LaPoint v. Stephens TPS, Inc.,* 2016-2957.

Finality of Judgment

For res judicata purposes, a final judgment is one "that disposes of the merits in whole or in part. The use of the phrase 'final judgment' also means that the preclusive effect of a judgment attaches once a final judgment has been signed by

the trial court and would bar any action filed thereafter unless the judgment is reversed on appeal." La.R.S. 13:4231, cmt. (d). *See also Oliver*, 156 So.3d 596.

Like validity, the finality of the October 20, 2015 Georgia judgment is firmly established. The Georgia court considered its jurisdictional reach as it applied to Stephens' and C&I's claim(s) under both Georgia and Louisiana law. It found no availability of recovery under the Louisiana workers' compensation law in that forum, concluding instead that "an employer or insurer's right is limited to benefits paid under [the] Georgia Workers' Compensation Act." No appeal was taken from the ruling.

Moreover, although Stephens and C&I contend that the Georgia ruling did not extend to any subrogation claim that could be brought under Louisiana law, we again find that position meritless. The Georgia court exercised its jurisdiction over the entirety of the claim before it, one in which Stephens and C&I participated by their intervention in the tort matters. They asserted their subrogation claim for both Georgia and Louisiana benefits. Within the context of that question, and chosen forum, the Georgia court determined that their "subrogation claim is governed by Georgia law" and that "[u]nder Georgia's workers' compensation statutory scheme, an employer or insurer's subrogation right is limited to benefits paid under Georgia's Workers' Compensation Act." It went on to say that, even assuming a potentially valid subrogation under Louisiana law, the Georgia law offered no remedy thereto.

Stephens and C&I erroneously contend that the Georgia ruling is not valid for the remaining issue of subrogation under the Louisiana workers' compensation act. Stephens and C&I seek both a reimbursement and a "credit" for their future workers' compensation obligation that stemmed from a Georgia accident, was adjudicated by all parties in a Georgia forum, and which, after the October 20, 2015 Georgia

judgment, resulted in a settlement reached in accordance with Georgia law, namely Ga.Code Ann., § 34-9-11.1.[7] Allowing Stephens and C&I to reach into that now-finite *tort recovery, available and obtained only under Georgia law*, would permit Stephens and C&I to avail themselves of proceeds not otherwise available to Mr. LaPoint given USCI's status as the principal contractor on the project. *See* La.R.S. 23:1032; La.R.S. 23:1061. *See, e.g., Allen v. State ex rel. Ernest N. Morial-New Orleans Exh. Hall Auth.*, 02-1072 (La. 4/9/03), 842 So.2d 373. *See also Berard v. The Lemoine Co., LLC*, 15-152 (La.App. 3 Cir. 7/8/15), 169 So.3d 839, *writ denied*, 15-1516 (La. 10/23/15), 179 So.3d 606. Allowing such access would undermine the integrity and purpose of the Georgia statutory scheme described by the Georgia court in its October 20, 2015 final judgment.

Further, that Georgia policy uniquely provided Mr. LaPoint with the ability to recover from a principal/statutory employer and/or its employee and insurer. In contrast, recovery in Louisiana rests exclusively in workers' compensation against all employers by operation of La.R.S. 23:1032 and La.R.S. 23:1061. While the parties debate whether La.R.S. 23:1102 and La.R.S. 23:1103 permit Stephens' and C&I's recovery for reimbursement and/or credits, doing so largely in their debate regarding subject matter jurisdiction, their focus misses the mark *in this case*. Subject matter jurisdiction certainly existed for such recovery that *may* have fallen outside of the Georgia litigation. However, as Mr. LaPoint's tort recovery was from a statutory employer and/or its employee, Stephens and C&I *could not* have recovered either reimbursement or credit from that recovery under the cited statutory authority. Instead, La.R.S. 23:1101, La.R.S. 23:1102, and La.R.S. 23:1103

---

[7] Whereas the Georgia judgment was rendered in October 2015, the settlement was not reached until 2016.

15

specifically preclude that recovery when the "third-party" is a *principal/statutory employer*, the unique scenario presented here.

La.R.S. 23:1101 instead defines "third person," providing that:

> A.      When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person (in this Section referred to as "third person") *other than those persons against whom the said employee's rights and remedies are limited in R.S. 23:1032*, a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee or his dependents, relations, or personal representatives against such third person, nor be regarded as establishing a measure of damages for the claim; and such employee or his dependents, relations, or personal representatives may obtain damages from or proceed at law against such third person to recover damages for the injury, or compensable sickness or disease.

(Emphasis added.)

As a principal/statutory employer, Mr. LaPointe's right of recovery against USCI and its employee—in this state—would have been exclusively in workers' compensation and, in turn, those defendants would not have been a "third party" for purposes of La.R.S. 23:1102 and La.R.S. 23:1103.  In short, there would have been no tort recovery at all under Louisiana law.

Identity of Parties

This third requirement for the exception of res judicata, that the parties to the initial judgment and the second action be the same, is uncontested as Mr. LaPoint, Stephens, and C&I were the parties involved in both the Georgia and Louisiana litigation.

Existence of the Cause of Action

Undoubtedly the cause of action, Stephens and C&I's attempt to recover benefits paid under the Louisiana workers' compensation act, *existed* at the time of

16

the October 20, 2015 judgment rendered by the Georgia court. As seen in the excerpt of its ruling quoted *infra*, the issue was placed squarely before that court and, in fact, the Georgia court rejected any claim for recovery of Louisiana benefits, instead finding Georgia workers' compensation law applicable to a workers' compensation subrogation claim filed in a hearing in Georgia in a Georgia tort suit.

We note here that much has been made in this court regarding whether Stephens and C&I sought, by their intervention in the Georgia third-party tort matters, both reimbursement for past compensation expenditures and for credits for future expenditures under the Louisiana workers' compensation scheme. In part, this fine division in the claim of reimbursement or credit is inconsequential, as the Georgia court determined that **Georgia law does not allow subrogation, at all, of any payments made under a foreign workers' compensation law**.

Further, the language of the interventions and the ongoing, monthly nature of the future "credits" undermines the position that Stephens and C&I intervened in the Georgia tort suit only for "reimbursement" of benefits previously paid and did not seek a specific "credit" for future expenditures under the Louisiana workers' compensation law.

The timeline of events is also illustrative of the strained nature of the reimbursement/credit division issue. Mr. LaPoint sustained injury in the work-related accident in Georgia on March 8, 2012. Workers' compensation benefits commenced in Georgia, but were transferred to Louisiana benefits shortly thereafter.[8] Mr. LaPoint filed his two Georgia suits against the third-party tortfeasors

---

[8] In addition to the fact that only $7,283.03 was paid in Georgia benefits indicates the short-lived nature of the benefits being pursued in that state. The "Claims Manager" notes, completed less than two months after the accident in April-May 2012, indicated that benefits were being transferred to Louisiana pursuant to Mr. LaPoint's choice.

in November 2013 and in March 2014. Stephens and C&I intervened in the tort claims in 2014. In each "Complaint for Intervention," Stephens and C&I indicated that: "Stephens TPS, Inc. and Commerce & Industry Insurance Company have paid indemnity benefits and medical benefits to date on Plaintiff's workers' compensation claim. *Payments continue on behalf of Plaintiff.*" (Emphasis added.) They further asserted that:

> Pursuant to the Georgia Workers' Compensation Act and O.C.G.A. § 34-9-11(b), Stephens TPS, Inc. and Commerce & Industry Insurance Co. will be seen as Plaintiffs in this case, and show they have a subrogation lien up to the actual amount of the compensation paid as of the date of any recovery paid to the Plaintiff Robert LaPoint, which they would contend they can recover from or against any recovery paid to Plaintiff Robert LaPoint in this action.
>
> WHEREFORE, Stephens TPS, Inc. and Commerce & Industry Insurance Co. show that if Plaintiff recovers any damages, those damages should be apportioned so that Stephens TPS, Inc. and Commerce & Industry Insurance Co., *can recover their claim for all medical and indemnity benefits as entitled by law.*"

(Emphasis added.) Thus, some two years after Georgia benefits ceased, Stephens and C&I intervened, seeking not only reimbursement of past expenditures, whether under Georgia or Louisiana law, but calling the Georgia court's attention to the fact that benefits were ongoing. They were obviously ongoing under the Louisiana compensation scheme, as they had been for almost two years prior. To now assert in this forum, that Stephens' and C&I's 2014 interventions in Georgia, which cited its continuation of payments, did not include a prayer toward future, ongoing payments is contrary to the continuing and cumulative nature of the workers' compensation benefits. Any potential cause of action obviously existed at the time of the Georgia proceeding and was, in fact, presented and adjudicated in the Georgia forum.

<u>Same transaction or occurrence</u>

The final element of res judicata is obvious. All compensation benefits arose out of the subject matter of the first Georgia tort litigation, as Stephens and C&I attempted to recover compensation benefits resulting from Mr. LaPoint's Georgia tort claim. The details of whether workers' compensation recovery was under Georgia or Louisiana law, or whether it was pursued as a reimbursement or as a credit against future payments, is of no moment. The inquiry is instead whether the cause of action for workers' compensation arose out of *the transaction or occurrence* that was the subject matter of the initial litigation. In this case, the occurrence of both was the accident causing injury and damages under Georgia law, which also necessitated the compensation payments.

Following examination of each of the elements required under La.R.S. 13:4231, we conclude that the exception of res judicata has merit. Given the final and preclusive effect of the Georgia court's ruling, we conclude that the workers' compensation judge erroneously rendered judgment awarding reimbursement from Mr. LaPoint's tort recovery and in ordering that Stephens and C&I are entitled to a credit for future compensation payments.

As this matter is resolved entirely by reference to the exception of res judicata, Mr. LaPoint's additional assignment of error is rendered moot.

**DECREE**

For the foregoing reasons, the Exception of Res Judicata filed by Appellant, Robert LaPoint is sustained and the underlying judgment rendered November 16, 2019 is reversed and vacated. Costs of this proceeding are assessed to Appellees, Stephens TPS, Inc. and Commerce and Industry Insurance Company.

**EXCEPTION OF RES JUDICATA SUSTAINED.**
**JUDGMENT REVERSED AND VACATED.**

ROBERT LAPOINT

VERSUS

COMMERCE & INDUSTRY INSURANCE

COMPANY AND STEPHENS TPS, INC.

**GREMILLION, Judge, dissents in part.**

I agree with the majority that the Georgia judgment constitutes res judicata as to the rights of Commerce & Industry Insurance Company and Stephens TPS, Inc.(C&I), for reimbursement for benefits paid prior to the rendition of that judgment. However, I dissent from the majority's ruling that the same judgment constitutes res judicata as to C&I's claim of a credit against future compensation.

Exceptions of res judicata are governed by La.R.S. 13:4231, which reads (emphasis added):

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, *with respect to any issue actually litigated and determined if its determination was essential to that judgment*.

C&I and Mr. LaPoint both admit that the issue of C&I's credit was not before the Georgia court; Georgia law does not recognize an employer's right to a credit. Under Georgia law, an employer enjoys a subrogation lien pursuant to Ga.Code Ann. §34-9-11.1. That lien may not "exceed the actual amount of compensation paid pursuant to this chapter[.]" *Id.* at subsection (b). The Georgia statute does not address a credit against future compensation the employer may have to pay. There is no counterpart in Georgia to the dollar-for-dollar credit an employer or insurer is entitled to under Louisiana law. In fact, Georgia law does not authorize a subrogation lien against recovery from third parties for future benefits. *GSU Ins. Co. v. Sabel Indus., Inc.*, 255 Ga.App. 236, 564 S.E.2d 836 (2002). This comports with the notion of "subrogation," in which one party, the subrogee, steps into the shoes of another, the subrogor; the subrogee's rights are no greater nor less than the subrogor's. *See Jordan v. TG&Y Stores Co.*, 256 Ga. 16, 342 S.E.2d 665 (1986).

The Georgia court was limited to the benefits *already paid* to or on behalf of Mr. LaPoint, and at that only what was paid pursuant to Georgia law. This is affirmed in the Georgia court's ruling, which stated, "In this Motion, Plaintiff seeks a determination that [Stephens] and [C&I] are not entitled to recover their subrogation lien as to workers['] compensation benefits paid under both Georgia's and Louisiana's workers['] compensation statutes." And further (emphasis added), "In their supporting brief, [Stephens] and [C&I] sought to intervene as to the total amount *then paid* to the Plaintiff, a vast majority of which was paid under the Louisiana statutes."

The issue of C&I's credit was never litigated. The issue of the credit was not essential to the Georgia judgment, which only addressed C&I's entitlement to subrogation against Mr. LaPoint's tortfeasors. Further, the applicable statutes make

2

clear that when a district court's judgment is silent on the issue of the employer's credit, that judgment is not res judicata.

The broad jurisdictional statement of OWC is set forth in La.R.S. 23:1310.3, which reads in pertient part:

> A. A claim for benefits, the controversion of entitlement to benefits, or other relief under the Workers' Compensation Act shall be initiated by the filing of the appropriate form with the office of workers' compensation administration. Mailing, facsimile transmission, or electronic transmission of the form and payment of the filing fee within five days of any such mailing or transmission constitutes the initiation of a claim under R.S. 23:1209.

Pursuant to La.R.S. 23:1103, the employer is entitled to first-dollar reimbursement for all compensation it has paid. It is also entitled to a dollar-for-dollar credit against any future compensation. The credit constitutes "relief under the Workers' Compensation Act."

According to La.R.S. 23:1101(B), the amount of a credit due an employer may be set forth in the judgment of the trial court in a third-party suit. If it is not, the credit will be determined in accordance with La.R.S. 23:1102(A). Section 1102(A)(2) provides:

> Any dispute between the employer and the employee regarding the calculation of the employer's credit may be filed with the office of workers' compensation and tried before a workers' compensation judge. However, any determination of the employer's credit shall not affect any rights granted to the employer or the employee pursuant to R.S. 23:1103(C).

The plain wording of La.R.S. 23:1101(B) provides that *if the parties agree*, the district court judgment may set forth the amount of credit due the employer; otherwise it will be determined pursuant to La.R.S. 23:1102(A), which provides for the OWC's jurisdiction to hear such a dispute. This indicates that the district court's silence on the issue of a credit does not constitute res judicata on that issue.

3

For the foregoing reasons, I dissent from the ruling of the majority finding that the Georgia judgment precludes litigation of the employer's credit.